BILLY STOOKSBURY and JACK LAY *v.* STATE OF TENNESSEE.

(*Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

KNOX BIGHAM, Assistant Attorney General, for the State.

CHARLES C. BURKS and FRANK L. FLYNN, both of Knoxville, for defendants.

486

Mr. Justice Prewitt delivered the opinion of the Court.

These two defendants Billy Stooksbury and Jack Lay were convicted on indictments tried jointly, for the offenses of assault with intent to commit murder in the first degree and larceny, with maximum prison sentences being set at twenty-one years and ten years respectively.

The victim was Mrs. Swann Smith, who lived in Knoxville, and it seems that she was casually acquainted with Stooksbury before this occurrence, but did not know the defendant Lay. The proof shows that about eleven-thirty A.M. of July 20, 1953, defendant Stooksbury called Mrs. Smith at her home and told her that he was going to leave his car up at Rocky Hill and wanted a ride back to Bearden. She later met Stooksbury and one Frank Snyder, the latter having died before this case was tried, at the Rocky Hill store, and after the men had taken their car down the hill, she gave them a ride in her car. Somewhere down the road at Stooksbury's request Mrs. Smith stopped and picked up the defendant Lay. The latter got in the back seat with Snyder. Mrs. Smith drove along until they came to the Morrell Road, where Stooksbury asked her to stop. After the car was stopped he got out of the car and told her to get out because he

was going to take over. He jerked her from under the steering wheel, put her in the back seat, and hit her about the head a number of times. Lay then got into the front seat under Stooksbury's instructions and the latter drove the car.

Mrs. Smith testified that she was suffering greatly from the wounds and that Lay had also struck her about the head and face. It seems that from this point on Mrs. Smith was conscious only part of the time. She does say that she remembered being in a wooded area and being beaten by Lay and Stooksbury at this place. That the two defendants discussed killing her, and that she heard them say that they were going to take her car to Detroit.

Mrs. Smith insisted that she was sober on this occasion, and that Stooksbury had a bottle of gin, but she did not see him take a drink. She also testified that Snyder never hit her. After being in the woods Mrs. Smith testified that she remembered nothing until she came to in a hospital.

The doctor, who saw her about five o'clock that same afternoon, testified that she was in a critical condition and was bruised and bleeding. Her car was a 1952 Chrysler Saratoga.

The witness Walter McAfee was a young boy, who lived in Anderson County. At about two o'clock in the afternoon in question he heard some screams near his home and went out to investigate and came upon Mrs. Smith's car on a road that was little used and concealed himself nearby. He heard a woman screaming for help and heard men talking. He didn't see but one man on this occasion and couldn't see his face. He heard one of the men say something about not running out on the others, and someone asked for matches in order to burn some blood on some leaves. Before the automobile left he

heard someone say that Frank had had an intercourse with the woman, and that another man had tried to. That he heard them say they should hurry up that the law was coming.

Sometime this same afternoon the Smith automobile appeared at the Benton store about four miles east of Andersonville, in Anderson County. That Stooksbury bought two coca colas, and while the car was stopped Mrs. Smith got out and in a weak voice said "my money."

Witnesses testified that she appeared to have been badly beaten and that Stooksbury shoved her back into the car. Later these parties went to the Boyer store in Anderson County, and there the defendant Lay was observed hitting a woman on the back seat of the car. The man, who saw this, told Lay to quit, and Lay replied that he had better go on about his business or he would get the same thing. Mrs. Smith was left on the porch of the Boyer store and a deputy sheriff came there in response to a telephone call and found her badly beaten and almost unconscious. An officer arrested Snyder about a quarter of a mile from the store and testified that he was in a drunken condition. Mrs. Smith's car was found the next day about a quarter of a mile from Andersonville.

The defendants testified for themselves stating that Mrs. Smith had been intimate with Stooksbury, and on this occasion she willingly participated in this drunken brawl with Stooksbury and Lay. They insisted that they were all very much under the influence of whisky, and that all of the fighting was done by Snyder and Mrs. Smith, and that all of the wounds inflicted upon Mrs. Smith were done by Snyder, now deceased.

It is insisted on the larceny charge that there is no proof by the State that Mrs. Smith's car was worth more than sixty dollars. However, it does appear it was

a Chrysler 1952 model, evidently in running order, and the Court would take judicial notice of the fact that such a vehicle is well worth more than sixty dollars.

However, as to the larceny charge we do not think that it was the intention of the defendants to steal the automobile of Mrs. Smith. We rather think that they simply were having a wild ride in the Smith car leaving their own car on the side of the road, and expected to later pick it up. No doubt the defendants were excited after they left Mrs. Smith and abandoned the car some quarter of a mile from where she was.

From the whole record we cannot say that these two defendants were justified in beating up this woman as they did. No doubt all of them were drinking to excess, but this furnishes no legal excuse for the defendants striking and beating up this woman.

The State insists that these two defendants are guilty of assault with intent to commit murder in the first degree, this being the offense for which they were convicted with the maximum punishment provided by Section 10797 of the Williams' Tennessee Code.

The defendants insist that this offense, if any, was only an assault and battery, since no deadly weapon was used in the commission of the assault.

In *Carter* v. *State*, 181 Tenn. 259, at page 264, 181 S. W. (2d) 137, at page 138, the court said:

"While we do not go so far as to hold that an assault might be made without weapons in such form and manner as to show an intent to commit murder, we are not persuaded that the facts here proven, a fair summary of which has been given, show such an intent."

Where deadly weapons are not used in the commission of the offense the intent forms the gist of the offense, and

where the intent constitutes the offense it must be proved. 1 Whar. Cr. Law, Section 1279; *Jones* v. *State*, 32 Tenn. 399.

In the present case the facts as above narrated do not disclose the use of a deadly weapon. However, in one view of the facts proven it could reasonably be said that this felonious intent to murder appears.

█ It is not necessary to prove the use of deadly weapons to show that the assault was made with the intent to commit murder, but where this deadly weapon does not appear the intent to commit murder must be proven in the case.

For instance one may be guilty of assault to commit murder in the first degree by choking another person, or by otherwise overpowering him in such a manner so as to constitute murder.

However, the prosecutrix appears in a bad light in going out with these men under the circumstances, letting them ride in her car and drinking with them for an afternoon of debauchery.

█ The judgment of the conviction of the larceny charge will be reversed, and the punishment of the defendants on the assault charge will be reduced from a maximum of twenty-one years to a maximum of five years, the defendants standing convicted of an assault with the intent to commit a felony. *Forsha* v. *State*, 183 Tenn. 604, 194 S. W. (2d) 463. See also Sections 10797-10801 Williams' Annotated Code of Tennessee.

All assignments are overruled and the judgment of the lower court as modified is affirmed as to the assault case.